Bigger, J.
The plaintiff sues to recover royalties claimed to be due under a coal lease for the years ending respectively June 30th, 1906, 1907 and 1908, and amounting in all to the sum of $4,657.50, and interest. The defendant’s contention in substance is that it has paid all that is due under the terms of the lease, and that even if. its construction of the terms of the lease should not be accepted as the correct construction thereof, that the plaintiff, is not entitled to recover more than has been paid, because the parties have already settled and adjusted the matters in dispute, and that there has been an accord and satisfaction.
The case is submitted to the court for decision upon an agreed statement of facts, supplemented by some oral evidence and the *642 argument of counsel. By the terms of the lease the sum of seven and one-half cents per ton of two thousand pounds of lump coal was to be,paid for minimum amount of lump coal of one hundred thousand tons for each and every year of the lease. The language of the lease is as follows:
“And the said second party for itself, its successors and assigns, does hereby covenant and agree to and with said first party, its successors and assigns, .that it will on July 1st, 1894, begin operations for the mining and removing of the coal afore-, said and will mine, properly screen with screens of the kind in-general use at the mines in the Hocking Valley and remove not less than one hunded thousand tons of lump coal from said property during each and every year thereafter until all the. workable and mineable and merchantable coal in tbe vein known as Number 6, in, upon or under said lands, has been removed therefrom, the same to be done in a careful, economical and workmanlike manner, and as customary and usual in the mines of the Hocking Valley, so as to save and put out the greatest practical amount of lump coal contained in said property, and that they will pay to the first party, its successors and assigns, every thirty days, namely, on the fifteenth day of each month, or if said fifteenth be Sunday, then on the day following, as rent and royalty, as hereinafter provided, for each and every ton of two thousand pounds of lump coal actually mined and removed during the preceding month; said one hundred thousand tons, after July Tst, 1895, to be distributed over the year in such way that in no three consecutive months shall less than fifteen thousand tons be mined and removed.
“And if the said second party shall neglect or fail from any cause to so mine and remove the said one hundred thousand tons of lump coal during any year, or said minimum of fifteen thousand tons for any consecutive three months after July 1st, 1895, it shall at the end of such year or three months, account-for and pay to the first party such portion of the royalty per-ton aforesaid that then be due if said number of tons had been, actually so mined and removed,. provided that in the case 9f royalty being paid in any year for the minimum tonnage, when' for" any reason the output has not reached the minimum, the'amount so overpaid, if any,- shall be deducted from the succeeding year’s royalty, if the output for such year'exceeds the mini-, mum output herein provided for.
“It is hereby, understood by and between the parties hereto that in case and so long as at any time it shall be impossible to *643 mine and remove said minimum number of tons, as hereinbefore provided, by reason of so-ealled faults in the vein of coal in said land, strikes, lockouts, the lack of transportation facilities, fires or other unavoidable casualties, reference being had to such faults as have heretofore been discovered in said veins in said land, such minimum shall not apply, but the said second party shall with all possible diligence prosecute the work of protecting or driving through said faults, and shall use all possible means by running tunnels, drifts or entries in other directions, and other methods, to reach good coal, and use all possible means to mine and remove the said number of tons every three months and every year, as hereinbefore specified.”
I take up first for consideration the claim of the defendant that there has been a complete accord and satisfaction.
At the respective dates provided in the lease the defendant made payments by check vouchers to the plaintiff for coal mined, as well as for unmined coal which the defendant claims was payment to the full amount due under the terms of the lease. The plaintiff admits the receipt of the check vouchers, and that they were cashed by the plaintiff, but denies that they were for the full amount due, and also denies the legal effect claimed by the defendant for the receipt of these sums of. money by the-plaintiff. And this renders it necessary to consider the nature of these transactions between the plaintiff and defendant under the terms of the lease. These payments were made by means of what are called cheek vouchers, and they are in their terms essentially the same in each ease. And at this point I notice the claim made by the plaintiff that the claim of “the plaintiff was in its nature a liquidated claim by virtue of the terms of the lease, which reserved a royalty of seven and a half cents per ton for a minimum amount of one hundred thousand tons of coal, and that in case of a liquidated demand that the payment of a less amount than the sum due, although agreed to be received in full satisfaction, can not be insisted upon because there is no valuable consideration to support it. Even this doctrine is not favored by the courts and has been expressly repudiated by the Supreme Court of this state in one case at least of a liquidated claim, Harper v. Graham, 20 Ohio State, 106. But was this *644 claim a liquidate one? A claim is liquidated when the amount due has been ascertained and agreed upon by'the parties or is fixed by operation of law. 1 Cyc., 334; 25 Cyc., 1444.
The contract in this ease does not provide that .seven and a-half cents per ton shall be paid annually upon one hundred thousand tons of coal at all events. That depends upon the conditions stated in the lease contract. In case of faults in the coal vein, strikes, lockouts, lack of transportation facilities, "fires and other unavoidable casualties, the minimum amount of coal provided to be mined and paid for was not to apply. It is agreed between the parties that in each of the years in question here, some one of these conditions arose. ‘In 1906 it was a strike. In 1907 it was a 'flood, and in 1908 a strike again. As soon as the' first of these conditions arose in 1906, a dispute 'arose between the parties as to the amount due from the defendant to the plaintiff under the terms of the lease. At the close of the year ending June 30th, 1905, a check voucher was sent by the defendant to the plaintiff for the amount which it claimed to be due under the terms of the lease. This was promptly returned by the plaintiff' with the'statement that it was'not correct, and it was more than two years before another voucher was sent in settlement of thésame claim of the plaintiff against the defendant, which voucher was received in October of 1908, and retained and cashed by the plaintiff. It thus appears from the agreed statement that prior to the receipt of the vouchers in question in this case a dispute had arisen between the parties as to the amount due for unmined coal under the terms of this lease, and it is therefore clear that this dispute could only be settled by the voluntary agreement of the parties, or by the judgment of a court of competent jurisdiction. '
The first of these vouchers which was received by the plaintiff and retained and receipted in full was -that for the third quarter of the year 1907, in which it is agreed that a flood had occurred' and which prevented for at least eight days the operation of the mine. This voucher, which was dated May 28th, 1907, recites' that it is for royalty on coal not mined to make up the balance', of minimum for the quarter ending March'- 31st, 1907: This. *645 voucher covers the royalty due on two mines, but the statement which refers to the mine here in question, and immediately following the above statement of the purpose of the voucher, is as follows:
“Mine Number 2, minimum for a quarter, 15,000 tons; allowance account flood, 1,600 tons; total, 13,400 tons; less tonnage mined, 4,249 tons; shortage, 9,151 tons, at seven and a half cents, ‡686.33.”
Following this is the approval and audit of the claim by the officers of the defendant company, and then follows this recitation ; ‘ ‘ The Huntington National Bank, of Columbus, Ohio, will pay the above amount when the receipted bill is dated and signed by the person or firm in whose name this voucher is drawn.” .Then follows the receipt in this language on the printed form: .“Received June 1st, 1907, from the Sunday Creek Company, .$984.93 in full for above account.” It seems to the court too clear to admit of dispute that this was a proposition from the defendant company to settle the claim of the plaintiff against it for royalty upon the basis stated, and that payment was to be made of this amount only on condition that it be accepted in full settlement. The purpose is clearly stated: “For royalty on coal not mined to make up balance of minimum for the quarter ending March 31, 1907.” This language clearly informed the . plaintiff that this was the total sum due according to the defendant’s view of the matter, for that quarter, and the plaintiff was clearly informed that this sum would only be paid to it on condition that it was accepted and receipted in full of the above account, and the account referred to was plainly to be for coal not mined to make up the balance due for that quarter after deducting what the defendant claimed was due to it on account of the flood occurring in that quarter.
It has been too often decided to be considered an open question that where such a dispute exists, and one party to the dispute tenders an amount in full settlement of the entire claim and it is accepted and a receipt in full given by the opposite party, that this constitutes an accord and satisfaction, and that *646 the party thus receipting will not be allowed afterward to litigate about the matter. The law favors the voluntary settlement of disputes, nor will it make any difference that the party thus receiving payment and receipting in full may do so with a mental reservation, or that he afterwards informs the party making the proposition that he only accepted it upon account. This was expressly decided by the Supreme Court in the recent case of The Seeds Grain & Hay Company v. Conger. The syllabus is:
“Where there is a bona fide dispute over an unliquidated demand and the debtor tenders an amount less than the amount in dispute upon the express condition that it shall be in full of the disputed claim, the creditor has but one alternative. He must accept the amount tendered upon the terms of the condition unless the condition be waived, or he must reject it entirely, or if he has received the amount by check in a letter he must return it. Where, in such ease, the creditor retains a cheek which was sent, upon the condition that it shall be in full satisfaction of the debt claimed to be due and receives the money thereon, and notifies the debtor that the amount is placed to his credit but that he does not intend that the same shall close up the matter in dispute, to which the debtor makes no reply, such silence by the debtor does not amount to a withdrawal of the condition which accompanied the tender, nor to a waiver of it. The transaction is an accord and satisfaction.”
This decision would seem to cover the case and be decisive of it as it was first submitted upon the agreed statement of facts. Subsequent to this decision the plaintiff asked leave to introduce some oral evidence upon the question of some verbal arrangement or agreement concerning the receipt and acceptance of the voucher checks in question, and I observe first, as to this, that it can not be made to apply in any event to the voucher of May 28th, 1907, which preceded this oral arrangement in point of time. As to that voucher it clearly falls within the rule that it was a complete accord and satisfaction, and that it is none the less so because of the notification that it was only received upon account. . This oral evidence was received by the court under the objection of counsel for the defendant. After careful. *647 consideration I am convinced it is not competent for the purpose for which it was offered. It is, of course, plain that both parties understood the tenor and effect of these voucher checks. It is clearly shown by the fact that in 1906 such a voucher was returned to the defendant by the plaintiff, who refused to accept it. This, like the others, contained upon it a receipt in full and notified the plaintiff that it was to be in full settlement for coal not mined for the year 1906, after deducting the amount which the defendant claimed it was entitled to receive as a. rebate on account of the strike. It is shown again very clearly by the evidence of Mr. Poston, who went to see Mr. Field, for the very reason that he understood this was to be in full settlement and not upon account. These settlements are in writing and contain the full terms of the settlement upon their face. They were submitted by the defendant to the plaintiff in this form and all that remained for the plaintiff to do was to receipt in full for the claim, and this is done upon the printed receipted form appended to the proposition of the defendant. It is stipulated by the parties that the officers signing these negotiations wherever signed were officers and agents duly authorized in the premises. This clearly covers the signing of the receipt by the secretary and treasurer of the New York Coal Company, and shows his authority in the premises.
An accord and satisfaction is as much a contract as any other, and when the contract is in writing the same rules are to be applied to it as are applied to other contracts in writing in so far as the competency of evidence to vary or contradict its terms is concerned. While it is true that a mere receipt in writing is subject to explanation by parol, this is hot true where the receipt constitutes one of the terms of a contract, and is in full settlement of a claim.
On this subject Jones says in his work on Evidence at Section 502:
“But where the receipt purports to be a full settlement or compromise of a claim, the courts have frequently refused to admit parol proof of the omission of other terms or conditions."
*648 That this is the rule in Ohio seems to be well settled by the decisions in the cases of Stone v. Evans, 6 Ohio, 246, and Jackson v. Ely, Executor, 57 Ohio State, 450. In this last ease Judge Bradbury says in delivering the opinion on page 458:
“Whatever the general rule may be as to the reception of parol evidence to explain a mere receipt, it is not admissible, at least in Ohio, to vary the terms of a contract, although the contract should be included in an instrument which was also a receipt for money or property."
Further on, he says:
“That the above instrument is something more than a mere receipt seems quite clear from an inspection of its terms. It states that the parties had come to a settlement in respect to every claim or demand that had before then existed between them. The sum of money stated in the margin, $15.50, manifestly, is a part of the instrument. It represents the amount found to be due upon an adjustment of whatever items were then open between them.”
The learned judge then follows this language by the citation of Goss v. Ellison, 136 Mass., 503, with approval, in which it was decided that a writing in the following terms could not be contradicted by parol: “Received of Mr. Elmer Ruggles a note on six months for $51 with interest, as full payment, as per claim.”
The court, speaking through Morton, Judge, said:
"If this could be treated merely as a receipt it might be open for plaintiff to show by parol that it was not intended as full payment and satisfaction of his claim against Ruggles. But it is more than a receipt. It is not only an acknowledgment of the receipt of Ruggles’ note for $51 but it is a statement of what the note was received for. It was received as full payment for the plaintiff’s claim against Ruggles. If the plaintiff should sue Ruggles this contract would be a bar to the suit because it is conclusive evidence of a settlement and satisfaction of the claim against him.”
This case, and the language of the court, is strictly applicable to the case before us. These so-called receipts are not merely *649 receipts. They are more than that. They are one of the essential terms of this contract of accord and satisfaction. They not only acknowledge the receipt of the- money, but as was said in the Massachusetts case, they are an acknowledgment which can not be contradicted by parol evidence that the amount received is in full settlement of the claim of the plaintiff for the period covered by them. Here was a plain and unequivocal offer upon one side to settle for the amount claimed by the defendant to be due for the period covered by the vouchers on account of unmined coal, allowing a .certain deduction to the defendant on account of the occurrence' of one of the unavoidable casualties provided for in the lease, and a plain statement that if received in full of the claim, that the amount stated in -the voucher would be paid by the bank and an acceptance of the proposition and receipt of the money, the whole- agreement being in writing. If parol proof may be accepted to contradict this and show that this was not an agreement at all, but that it was something entirely different, what becomes of the rule against contradicting and varying the terms of written contracts by parol? C-
Mr. Field says it was within his power to have changed the proposition, but it was not- done, but the contract which was in writing was allowed to stand and the voucher was used.
Upon the authorities cited, and many others which might cited to the same effect, I have reached the conclusion that the defense made that there was a complete accord and satisfaction is established by the evidence before the court, and that the defendant is entitled to a finding and judgment in its favor. This dispenses with the necessity of considering. the other question raised in the case.